IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY S. REEVES, on behalf of herself
and all others similarly situated                                    PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:14-cv-640-DPJ-LRA

DENBURY ONSHORE, LLC                                                DEFENDANT

**ORDER**

THIS cause came before the Court for telephonic hearing on January 29, 2015,

on Mississippi Power Company's ["MPC"] Motion to Quash [37].  By agreement of all

parties, argument on Treetop Midstream Services, LLC's ["Treetop"] Motion to Quash

[44] was also heard.  The movant MPC is a non-party, as is Treetop.  Plaintiff issued a

Subpoena *Duces Tecum* seeking production of two contracts MPC has entered into,

being (1) the Carbon Dioxide (CO2) Offtake Agreement dated March 4, 2011, between

MPC and Denbury Offshore, LLC, Defendant ("the Denbury Agreement") and (2) the

CO2 Offtake Agreement dated May 19, 2011, between MPC and non-party Treetop.  In

response to the Subpoena, MPC provided redacted and "publicly available" versions of

the two agreements to Plaintiff.

Plaintiff is a mineral owner who has executed an oil and gas lease to Denbury,

and Denbury pays royalties under the lease for the sale of CO2 produced under the

lease from various CO2 wells in Madison County and Rankin County, Mississippi.  She

purports to sue on her own behalf and on behalf of other mineral owners similarly

situated, and the issue of whether a class action will be certified is pending before the

Court.  She, and the proposed class members, contend that Denbury is underpaying

them by using calculations for royalties on CO2 based on less than the fair market

value.  Further, according to Plaintiff, Denbury improperly took certain deductions off

royalty payments for its post-well costs.  Instead of selling its $CO_2$ production to third-party oil producers at premium prices, Plaintiff charges that Denbury has kept most of the $CO_2$ for its own use in its enhanced oil recovery operations ["EOR"], calculating the royalties paid to Plaintiff at less than fair market value ["FMV"].  Plaintiff contends that to establish the FMV of the $CO_2$, her experts require that they be allowed access to the Denbury and Treetop agreements;  the agreements are relevant to Plaintiff's burden of proving the FMV of the $CO_2$.  Denbury and Treetop are in direct competition with each other relative to MPC, and one of the agreements is subject to renegotiation in the coming months.  Both Denbury and Treetop are in the business of using $CO_2$ for enhanced oil recovery, and both companies purchase $CO_2$ from MPC.

MPC set forth the background of the industry and of its negotiations of $CO_2$ contracts in its supporting memorandum.  As it noted, Mississippi is a leading state in the growth of $CO_2$ enhanced oil recovery [EOR] industry.  EOR involves the injection of $CO_2$ mixes with oil in underground oil reservoirs to enhance oil production from these reservoirs, known as EOR projects.  The $CO_2$ delivered to these EOR projects is either derived from natural $CO_2$ wells, or through a process known as "carbon capture," which captures $CO_2$ by-product from coal-powered industrial plants.  MPC is constructing a coal-powered Integrated Combined Cycle Generation power plant in Kemper County, Mississippi.  The plant contains innovative carbon capture technology to capture the natural $CO_2$ by-product from coal combustion.  MPC is subject to air permits and environmental regulations, and its failure to deliver the $CO_2$ off-site could jeopardize the plant's operations.

Both Denbury and Treetop agreed to purchase the $CO_2$ from the Kemper County plant to use in their EOR projects.  As stated, they are direct competitors, and  MPC contends that it will be harmed by the disclosure of the agreements.  According to MPC, disclosure of the Agreement-specific confidential $CO_2$ information would cause it substantial economic harm and could jeopardize the operation of its Kemper County plant.  The release of the Treetop agreement would provide Denbury with a competitive advantage.  If these terms were disclosed, future vendors and counterparties with whom MPC negotiates will have a competitive advantage by knowing what terms MPC has previously agreed to.  In support of MPC's contention that it would suffer substantial harm by the disclosure of the agreements, it has submitted the sworn affidavit of Ralph "Allen" Reaves, Jr., Vice President and Senior Production Officer of MPC [37-2], as well as the sworn affidavit of Thomas E. Wofford, representative for Treetop [37-7; 44-2]. Mr. Reaves avers that the confidential information in the Agreements consist of Agreement-specific $CO_2$ price and delivery information; methodology, processes, models, assumptions, charts and technical data; and, the commercial terms regarding take and tender obligations, risk allocation, insurance obligations, payment terms, performance, default and default remedies.

Mr. Reaves has sworn that MPC has made extensive efforts to maintain the secrecy of the agreements, and only MPC personnel have access to them.  Disclosure would negatively impact the sales price of MPC's $CO_2$ and would damage MPC's ability to fairly negotiate similar transactions with Denbury, Treetop or other parties, as well as present MPC with potential operational difficulties related to the Project.

Plaintiff contends that the agreements are relevant to its burden of proving what the fair market value of $CO_2$ is, and that her experts require the agreements in order to render an opinion as to fair market value.  Citing the high burden on Plaintiff to have the class certified, she argues she should be allowed this discovery.  She is willing to abide by the Protective Order entered in this case, or she is willing to obtain the agreements under an "Attorneys' Eyes Only" Protective Order.  Citing the comments under Rule 26(c) of the Federal Rules of Civil Procedure, which cites *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 999 (10th Cir. 1965), Plaintiff asserts she must only show relevance and need when trade secrets or confidential information may be produced under a Protective Order — not the higher standard of "substantial need" required for non-parties under Rule 45.  Even so, she asserts that the information contained in the agreements is necessary to establish market value.

Rule 45 (d) (3) provides for "Quashing or Modifying a Subpoena," and allows the Court to quash or modify a subpoena under certain circumstances, one of which is— "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed.R.Civ.P. 45 (d)(3)(A)(iii).  If the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information," the Court may quash or modify the subpoena.  Fed.R.Civ.P. 45(d)(3)(B)(I).  Instead of quashing or modifying it, the Court may order production under specified conditions if the serving party:

> (I)    shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship....

Fed.R.Civ.P. 45(d)(3)(C)(I).

The Court finds that Rule 45 does apply, and MPC has presented probative evidence sufficient to establish that full compliance with the subpoena will require disclosing details of the agreements which would fall under the category of "...other confidential research, development, or commercial information."  MPC is a non-party, as is Treetop, and the agreements contain highly sensitive commercial information, the release of which *will harm* MPC by negatively impacting the sales price of MPC's CO2 and will damage MPC's ability to fairly negotiate.  MPC has presented sworn affidavits attesting to these facts, and this evidence has not been overcome by Plaintiff.  Plaintiff contends that the harm is speculative or conclusory, but the affidavits confirm that the release of the information would case substantial competitive and economic harm to MPC, including increasing costs to MPC.

Plaintiff asserts that the information is relevant to determining fair market value of CO2, but she does not convince the Court that the determination of FMV is necessary for the class certification or dispositive issues now before the Court.  Further, she has not shown that there are no other competent methods of proving FMV.  Although FMV may be a potential issue in this lawsuit, Plaintiff has not shown that she presently has a "substantial need" for the information that cannot be otherwise met without undue hardship.

The Fifth Circuit has acknowledged that competitive harm is a sufficient reason to enter a protective order prohibiting disclosure of confidential information.  *See United States v. United Fruit Co.,* 410 F.2d 553, 557 n. 11 (5th Cir. 1969) (holding confidential and commercially sensitive marketing plans of a company protected from disclosure). Further, the undersigned agrees that "disclosure to a competitor is presumed to be

more harmful than disclosure to a non-competitor...." *Neil Corp. v. John Paul Mitchell Sys.,* 1995 WL 217480, *6, Civ. A. No. 92-2157 (E.D. La. April 12, 1995) (protective order prohibiting discovery of company's "business plans, projections, or sales plans" which could be used by competitors); *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed.Cir.1987) (disclosure to a competitor presumed to be harmful to the disclosing entity).  Denbury and Treetop are direct competitors with one another and have no access to the other's agreement.

The fact that both MPC and Treetop are non-parties in this lawsuit is particularly relevant to the Court's holding.  Allowing the disclosure of a party's confidential business information (under a protective order) is less troublesome to the Court than allowing disclosure of a non-party's confidential business information.  Although Rule 26(b) does apply to discovery of non-parties as well as parties, non-party status is considered when this Court weighs the burdens imposed in providing the requested discovery.  *See Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) (discussing importance of non-party status when balancing the burden of disclosure versus the need for discovery and using a case-specific balancing test).  The undersigned has conducted a balancing test regarding the specific circumstances in this case and concludes that it weighs against any further disclosure at this time.

MPC has established its showing of confidentiality and harm, and Plaintiff has failed to establish the requisite relevancy at this time and her substantial need.  The Court is convinced that the agreements are not "needed" for purposes of the Motion to Dismiss or for the class certification determination.   Plaintiff asserts that an "Attorneys' Eyes Only" protective order could be ordered which would ensure the confidentiality of

these agreements.  At this stage of the litigation, no "substantial need" for the confidential information has been established which would overcome the potential harm which may result to these non-parties.  The Court is convinced that such a Protective Order is insufficient to eliminate the harm to MPC, particularly in light of the fact that Plaintiff has not shown that information regarding FMV cannot be obtained from other sources.  The issue may be revisited after rulings are made on the class certification and/or the motion to dismiss, particularly as to the Denbury agreement.

IT IS THEREFORE ORDERED:

1.    Mississippi Power Company's Motion to Quash Subpoena *Duces Tecum* and for Protective Order [37] is **granted**, and it is relieved from further response to the subpoena issued by Plaintiff in this case.

2.    Treetop Midstream Services, LLC's Motion for Leave to File Motion to Quash or Modify Subpoena *Duces Tecum* [43] and its Motion to Quash or Modify Subpoena [44] are **granted**, and it is relieved from further response to the subpoena issued by Plaintiff in this case.

SO ORDERED this the 5th day of February, 2015.


_____S/ Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE